IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

GARY A. KNEBEL,

Plaintiff,

vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

Defendant.

No. C12-0015

RULING ON JUDICIAL REVIEW

## TABLE OF CONTENTS

*I. INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*II. PRINCIPLES OF REVIEW* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*III. FACTS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
   *A. Knebel's Education and Employment Background* . . . . . . . . . . . . . . 4
   *B. Administrative Hearing Testimony* . . . . . . . . . . . . . . . . . . . . . . . . 4
      *1. Knebel's Testimony* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
      *2. Vocational Expert's Testimony* . . . . . . . . . . . . . . . . . . . . . 5
   *C. Knebel's Medical History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*IV. CONCLUSIONS OF LAW* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
   *A. ALJ's Disability Determination* . . . . . . . . . . . . . . . . . . . . . . . . . 11
   *B. Objections Raised By Claimant* . . . . . . . . . . . . . . . . . . . . . . . . . 12
      *1. Credibility Determination* . . . . . . . . . . . . . . . . . . . . . . . 13
      *2. Treating Source Opinions* . . . . . . . . . . . . . . . . . . . . . . . 16
   *C. Reversal or Remand* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*V. CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*VI. ORDER* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

## I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 3) filed by Plaintiff Gary A. Knebel on February 1, 2012, requesting judicial review of the Social Security Commissioner's decision to deny his applications for Title II disability insurance benefits and Title XVI supplemental security income ("SSI") benefits.[1] Knebel asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide him disability insurance benefits and SSI benefits. In the alternative, Knebel requests the Court to remand this matter for further proceedings.

## II. PRINCIPLES OF REVIEW

Title 42, United States Code, Section 405(g) provides that the Commissioner's final determination following an administrative hearing not to award disability insurance benefits is subject to judicial review. 42 U.S.C. § 405(g). Pursuant to 42 U.S.C. § 1383(c)(3), the Commissioner's final determination after an administrative hearing not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3). Title 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

---

[1] On March 6, 2012, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

Additionally, on July 18, 2012, the Court entered an Order granting the Commissioner's unresisted Motion for Remand. *See* docket number 12. The remand order was under sentence six of 42 U.S.C. § 405(g), for purposes of determining whether the administrative record was complete in this matter. The case was administratively closed. On May 8, 2014, the Court entered an Order reopening the case and directed the Clerk of Court to enter a new briefing schedule for both parties in this case. *See* docket number 17. The case is now fully briefed and ready for decision.

The Court will "affirm the Commissioner's decision if supported by substantial evidence on the record as a whole." *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012) (citation omitted). Substantial evidence is defined as "'less than a preponderance but . . . enough that a reasonable mind would find it adequate to support the conclusion.'" *Id.* (quoting *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010)); *see also Brock v. Astrue*, 674 F.3d 1062, 1063 (8th Cir. 2010) ("Substantial evidence is evidence that a reasonable person might accept as adequate to support a decision but is less than a preponderance.").

In determining whether the decision of the Administrative Law Judge ("ALJ") meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision "extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Buckner v. Astrue*, 646 F.3d 549 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 556 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). "'An ALJ's

decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) ("If substantial evidence supports the ALJ's decision, we will not reverse the decision merely because substantial evidence would have also supported a contrary outcome, or because we would have decided differently."); *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("'If there is substantial evidence to support the Commissioner's conclusion, we may not reverse even though there may also be substantial evidence to support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005).").

## III. FACTS

### A. Knebel's Education and Employment Background

Knebel was born in 1975. He did not graduate from high school, but later earned a GED. In the past, he worked as a handyman and janitor/laborer.

### B. Administrative Hearing Testimony

#### 1. Knebel's Testimony

At the administrative hearing, Knebel explained that in August 2007, he injured his neck at work. Specifically, Knebel suffered a herniation at C6-C7 in his spine. After unsuccessful conservative treatment, Knebel underwent neck surgery in March 2008. Knebel testified that he continues to have neck pain that radiates into his left shoulder and arm. Knebel explained further:

> From the herniation of the C6-C7, it pinched a nerve to the left side of my body, resulting in a dead nerve ending, as I've been told. And what it does is, it causes the left side of my body, my arm to go numb and tingle. I'm left-hand dominant, so any time I really try to do anything with my hand or my arm,

4

> it hurts, it bothers me. It puts me in intense pain I'd say
> probably 90 percent of the time.

(Administrative Record at 22-23.) According to Knebel, his pain level is consistently between 7 and 8, on a scale of 0 to 10 with 10 being the most severe pain. Knebel also described "severe winging" in his left shoulder blade. Specifically, he stated that "[t]he scapula muscle around the shoulder blade is deteriorating away due to the nerve problems I'm having as a result of breaking my neck working for a company."[2] Knebel testified that he is unable to use his "left arm at all."

Knebel also testified that he suffers from depression. Knebel described his depressive symptoms as follows:

> Most of the time, I'm angry. I'm, I'm very upset because I
> can't do what I used to be able to do. I feel like a quarter of
> a man. And not being able to work or provide for my family
> has severely impacted my everyday lifestyle and how I look,
> and operate, and think about things.

(Administrative Record at 28.)

### 2. Vocational Expert's Testimony

At the hearing, the ALJ provided vocational expert Elizabeth Albrecht with a hypothetical for an individual who is limited to:

> lifting 20 pounds occasionally, 10 pounds frequently; sitting
> two hours at a time for six of an eight-hour day, . . . standing
> two hours at a time for six of an eight-hour day, so it's six of
> an eight-hour day for each of those two; walking up to two
> blocks; no climbing ladders, ropes, and scaffolds; . . . only
> occasional climbing of ramps and stairs; only occasional
> balancing, stooping, kneeling, crouching, crawling, and
> bending.

(Administrative Record at 35.) The vocational expert testified that under such limitations, Knebel could not perform his past relevant work. The vocational expert testified,

---

[2] Administrative Record at 25.

however, that Knebel could perform the following light unskilled jobs: (1) small products assembler, (2) routing clerk, and (3) mail clerk. The ALJ provided the vocational expert with a second hypothetical that was identical to the first hypothetical, except that the individual would also miss three or more days of work per month due to chronic pain. The vocational expert testified that under such limitations, Knebel would be precluded from competitive employment.

Knebel's attorney also questioned the vocational expert:

> Q: If the hypothetical person, due to pain problems, had to work at a slow pace up to a third of the workday, would he be competitively employable?
>
> A: No. If they worked at a slow pace a third of the day, they're not competitively employable.
>
> Q: I think the records indicate that he would need frequent breaks, more than those scheduled. If he were to take three to four or more extra work breaks, 15 minutes at a time, would an employer allow for that much extra break?
>
> A: No. . . .

(Administrative Record at 37.)

### C. Knebel's Medical History

On August 8, 2007, Knebel presented at emergency services for the University of Iowa Hospitals and Clinics, complaining of "very painful" and "aggravating" muscle pain in his shoulder. Knebel claimed to have been experiencing pain in his shoulder since October 2006. He had been self-treating with heat and ibuprofen. Upon examination, Dr. Dana Collaguazo, M.D., diagnosed Knebel with periscapular muscle pain. Dr. Collaguazo prescribed Flexeril, a muscle relaxant, for treatment, and recommended further testing.

On August 22, 2007, Knebel met with Dr. Chris J. Van Hofwegen, M.D., and Dr. Brian Wolf, M.D., regarding his shoulder pain. In reviewing Knebel's medical history, Dr. Van Hofwegen noted:

> Mr. Knebel . . . is now complaining of a year-long history of left shoulder pain. This is periscapular in nature. It starts in some of the muscle bellies medial to the scapula and then proceeds down into his arm with inconsistent numbness and tingling. He does not feel any weakness. He says that the pain is there all the time, feels like a "ice pick is being driven into his back." There does not seem to be any activity in particular that makes it better or worse. It is constant. The numbness and tingling are inconsistent.

(Administrative Record at 291.) Upon examination, the doctors diagnosed Knebel with left periscapular pain. An MRI was ordered for further study of his shoulder pain. The MRI showed a large left paracentral disc osteophyte at C6-7, with severe narrowing of the central canal.

On September 13, 2007, Knebel met with Dr. Joseph D. Smucker, M.D., regarding his neck pain and left-sided numbness and tingling in his arm. Upon examination, Dr. Smucker concluded that Knebel's C6-7 disc problem was causing "significant" back pain and discomfort, with some inconsistent neurologic symptoms. Dr. Smucker recommended an epidural steroid injection and use of an arm immobilizer as treatment. Dr. Smucker also restricted Knebel to lifting no more than 5 pounds, but stated "he is able to be active and move around the house."[3]

On November 29, 2007, Dr. Jan Hunter, D.O., reviewed Knebel's medical records and provided Disability Determination Services ("DDS") with a physical residual functional capacity ("RFC") assessment for Knebel. Dr. Hunter determined that Knebel could: (1) occasionally lift and/or carry 20 pounds, (2) frequently lift and/or carry 10 pounds, (3) stand and/or walk with normal breaks for a total of about six hours in an eight-hour workday, (4) sit with normal breaks for a total of about six hours in an eight-hour workday, and (5) push and/or pull without limitations. Dr. Hunter also determined

---

[3] Administrative Record at 283.

that Knebel could occasionally climb, balance, stoop, kneel, crouch, and crawl. Dr. Hunter found no manipulative, visual, communicative, or environmental limitations.

In March 2008, Knebel underwent surgery on his spine. Dr. Smucker performed a C6-7 fusion and diskectomy with decompression of the spinal cord. Following a period of recovery, on July 1, 2008, Dr. Smucker completed a Report on Incapacity ("ROI") form for Knebel. Dr. Smucker indicated that Knebel had restrictions related to his surgery. Dr. Smucker opined that Knebel could only perform light duty work, with no lifting, limited duty hours, and minimal bending and twisting.

In August 2008, Knebel met with Dr. Smucker and Dr. John E. Femino, M.D., complaining of neck, low back, and right foot pain. According to Knebel, his right foot pain was bothering him the most. Two months prior, in June, Knebel injured his foot in a motor vehicle accident. Knebel was a passenger in a car that hit a deer. Upon examination, Drs. Smucker and Femino diagnosed Knebel with Lisfranc ligamentous injury to the right foot, post-surgery neck pain, and low back pain. In September, Dr. Femino performed surgery on Knebel's right foot. Dr. Femino filled out an ROI form for Knebel, and indicated that he would require recovery and treatment for 3 to 9 months. Dr. Femino checked a box stating that Knebel was unable to seek work, but wrote on the form that Knebel could work in a non-weight-bearing position. In November 2008, Dr. Femino filled out another ROI form for Knebel, and opined that Knebel could seek work in January 2009, following recovery from further foot surgery. Dr. Femino also placed the following work restrictions on Knebel: (1) no standing/walking for more than 1 hour in an eight-hour workday; (2) no stooping, bending, squatting, crouching, crawling, climbing, kneeling, or balancing; and (3) no lifting over 10 pounds.

On November 16, 2008, Knebel met with Dr. Thomas J. Hughes, M.D., for an independent medical evaluation. Dr. Hughes determined that:

> Obviously, [] Knebel had some preexisting symptomatology suggesting that there may have been some underlying problems

with the C6-7 disc, but he then had an acute work related injury where he had profound manifestations of a disc herniation which were confirmed on MRI testing. He was submitted to conservative management, but failed to improve and eventually underwent a definitive surgery which proved to be effective in managing his condition. I thought the findings were modest or consistent with having undergone an anterior cervical fusion, but I certainly did not find any significant residual of radiculopathy.

(Administrative Record at 368.) Dr. Hughes concluded that Knebel has a 26% "Whole Person Impairment Rating."

On December 18, 2008, Knebel met with Dr. Charles R. Buck, M.D., for a second independent medical evaluation. Knebel reported to Dr. Buck that he:

is unable to do significant lifting. He believes he is on a 10 pound lifting restriction. Prolonged sitting, standing and repetitive body movement causes severe neck and upper extremity pain. He gets occasional numbness and tingling into his left upper extremity especially when reaching overhead with his arm. He has moderate morning stiffness. He rates his overall pain level at 5 out of 10[.] . . . He takes no medication. He believes he will heal with time.

(Administrative Record at 446-447.) Upon examination and review of Knebel's medical records, Dr. Buck diagnosed Knebel with status postoperative left C6-C7 cervical fusion. Dr. Buck opined that "[n]o active medical treatment is recommended for this gentleman."[4] Dr. Buck concluded that "[p]ermanent restriction would include no repetitive overhead work. There is no objective basis for other permanent restriction."[5] Dr. Buck determined that Knebel has a 15% whole body impairment.

In January 2009, Dr. Femino removed two screws from Knebel's right foot. Following a recovery period, on February 24, 2009, Dr. Femino completed an ROI form

---

[4] Administrative Record at 447.

[5] *Id.* at 448.

9

for Knebel indicating that he was unable to work due to his right foot injury. Dr. Femino opined that Knebel's condition should resolve in ten weeks with physical therapy. Dr. Femino believed Knebel could seek work begining on May 10, 2009.

On January 20, 2009, Dr. Hunter reviewed Knebel's medical records and provided DDS with a second RFC assessment for Knebel. Dr. Hunter determined that Knebel could: (1) occasionally lift and/or carry 20 pounds, (2) frequently lift and/or carry 10 pounds, (3) stand and/or walk with normal breaks for a total of about six hours in an eight-hour workday, (4) sit with normal breaks for a total of about six hours in an eight-hour workday, and (5) push and/or pull without limitations. Dr. Hunter also determined that Knebel could occasionally climb, balance, stoop, kneel, crouch, and crawl. Dr. Hunter found no manipulative, visual, communicative, or environmental limitations. Dr. Hunter concluded that Knebel "does suffer from impairments which would restrict his functioning. However, he has undergone surgeries for them and would be capable of performing the above work related activity prior to 8/09 and from 8/07-7/08."[6]

On June 30, 2009, Knebel was referred by Dr. Smucker to Dr. Robert K. Yang for consideration of trigger point injections as treatment for Knebel's left side neck and shoulder pain. Upon examination, Dr. Yang diagnosed Knebel with myofascial pain. Dr. Yang administered a trigger point injection as treatment. On August 20, 2009, Dr. Yang filled out an ROI form for Knebel. Dr. Yang opined that Knebel was generally unable to work, but could seek light duty work. Dr. Yang noted that "[a]t this time [Knebel] has no work suitable based on his experience."[7] The following day, on August 21, Dr. Yang met with Knebel and explained that while he could not find work suitable for his experience level, he was capable of light duty work, with no lifting greater than 25 pounds and avoidance of overhead lifting.

---

[6] Administrative Record at 949.

[7] *Id.* at 1009.

## IV. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Knebel is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007); *Anderson v. Barnhart*, 344 F.3d 809, 812 (8th Cir. 2003). The five steps an ALJ must consider are:

> (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.

*Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citing *Eichelberger*, 390 F.3d at 590); *see also* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In order to establish a disability claim, "the claimant bears the initial burden to show that [he or] she is unable to perform [his or] her past relevant work." *Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998) (citing *Reed v. Sullivan*, 988 F.2d 812, 815 (8th Cir. 1993)). If the claimant meets this burden, the burden of proof then shifts to the Commissioner to demonstrate that the claimant retains the residual functional capacity ("RFC") to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Id.* The RFC is the most an individual can do despite the combined

effect of all of his or her credible limitations. 20 C.F.R. §§ 404.1545, 416.945. "It is 'the ALJ's responsibility to determine [a] claimant's RFC based on all the relevant evidence, including medical records, observations of treating physicians and others, and [the] claimant's own description of her limitations.'" *Page*, 484 F.3d at 1043 (quoting *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)); 20 C.F.R. §§ 404.1545, 416.945.

The ALJ applied the first step of the analysis and determined that Knebel had not engaged in substantial gainful activity since August 8, 2007. At the second step, the ALJ concluded from the medical evidence that Knebel had the following severe impairments: disc herniation at C6-7 with status post fusion, right lisfranc injury with an open reduction internal fixation of the right foot, and GERD. At the third step, the ALJ found that Knebel did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Knebel's RFC as follows:

> [Knebel] has the residual functional capacity to perform light work . . . except he can lift and carry twenty pounds occasionally and ten pounds frequently. He can sit and stand two hours at one time for a total of six hours in an eight hour day. He can walk two blocks. He cannot climb ladders, scaffolds or ropes. He cannot balance and he can only occasionally climb ramps and stairs.

(Administrative record at 12.) Also at the fourth step, the ALJ determined that Knebel could not perform his past relevant work. At the fifth step, the ALJ determined that based on his age, education, previous work experience, and RFC, Knebel could work at jobs that exist in significant numbers in the national economy. Therefore, the ALJ concluded that Knebel was not disabled.

## B. Objections Raised By Claimant

Knebel argues that the ALJ erred in two respects. First, Knebel argues that the ALJ failed to properly evaluate his subjective allegations of pain and disability. Second, Knebel

argues that the ALJ failed to properly evaluate the opinions of his treating sources, Drs. Smucker, Femino, and Yang.

### 1.    Credibility Determination

Knebel argues that the ALJ failed to properly evaluate his subjective allegations of pain and disability. Knebel maintains that the ALJ's credibility determination is not supported by substantial evidence. The Commissioner argues that the ALJ properly considered Knebel's testimony, and properly evaluated the credibility of his subjective complaints.

When assessing a claimant's credibility, "[t]he [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; [and] (5) functional restrictions." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). An ALJ should also consider a "a claimant's work history and the absence of objective medical evidence to support the claimant's complaints[.]" *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008) (citing *Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000)). The ALJ, however, may not disregard a claimant's subjective complaints "'solely because the objective medical evidence does not fully support them.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012) (quoting *Wiese v. Astrue*, 552 F.3d 728, 733 (8th Cir. 2009)).

Instead, an ALJ may discount a claimant's subjective complaints "if there are inconsistencies in the record as a whole." *Wildman*, 596 F.3d at 968; *see also Finch*, 547 F.3d at 935 (same); *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) ("The ALJ may not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies

in the record as a whole."). If an ALJ discounts a claimant's subjective complaints, he or she is required to "'make an express credibility determination, detailing the reasons for discounting the testimony, setting forth the inconsistencies, and discussing the Polaski factors.'" *Renstrom*, 680 F.3d at 1066 (quoting *Dipple v. Astrue*, 601 F.3d 833, 837 (8th Cir. 2010)); *see also Ford*, 518 F.3d at 982 (An ALJ is "required to 'detail the reasons for discrediting the testimony and set forth the inconsistencies found.' *Lewis v. Barnhart*, 353 F.3d 642, 647 (8th Cir. 2003)."). Where an ALJ seriously considers, but for good reason explicitly discredits a claimant's subjective complaints, the Court will not disturb the ALJ's credibility determination. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001) (citing *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996)); *see also Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (providing that deference is given to an ALJ when the ALJ explicitly discredits a claimant's testimony and gives good reason for doing so); *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003) ("If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, we will normally defer to the ALJ's credibility determination."). "'The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts.'" *Vossen v. Astrue*, 612 F.3d 1011, 1017 (8th Cir. 2010) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001)).

In his decision, the ALJ determined that:

> After careful consideration of the evidence, the undersigned finds that [Knebel's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Knebel's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

(Administrative Record at 13.)

14

In his decision, the ALJ sets forth the law for making a credibility determination under the Social Security Regulations.[8] The ALJ failed to apply the law, however, in determining the credibility of Knebel's testimony and subjective allegations. Specifically, the Court finds that the ALJ's decision lacks the required detail for discrediting a claimant and explaining the inconsistencies between the claimant's subjective allegations and the record as a whole. *See Renstrom*, 680 F.3d at 1066; *Ford*, 518 F.3d at 982; *see also Pelkey*, 433 F.3d at 578 (the ALJ must give reasons for discrediting a claimant). The ALJ briefly outlines Knebel's general testimony, but offers nothing in terms of the *Polaski* factors and how those factors relate to Knebel's subjective testimony and credibility. The ALJ simply states that Knebel's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment."[9] The ALJ's decision provides no reasons for discounting Knebel's testimony other than his allegations are inconsistent with the ALJ's RFC assessment. *See Pelkey*, 433 F.3d at 578 (the ALJ must give reasons for discrediting a claimant). Because the ALJ's decision lacks any discussion of the reasons for discrediting Knebel, except that his allegations are inconsistent with the ALJ's RFC assessment, and lacks full consideration of *Polaski* or any of the *Polaski* factors, the Court finds that remand is appropriate for the ALJ to further develop the record with regard to Knebel's credibility. On remand, the ALJ shall set forth in detail his reasons for finding Knebel's subjective allegations to be credible or not credible. If on remand, the ALJ finds Knebel's testimony not to be credible, the ALJ shall fully explain the reasons for his credibility determination and fully explain the inconsistencies between Knebel's subjective allegations and the evidence in the record.

---

[8] *See* Administrative Record at 12-13.

[9] Administrative Record at 13.

## 2. *Treating Source Opinions*

Knebel argues that the ALJ failed to properly evaluate the opinions of his treating sources, Dr. Smucker, Dr. Femino, and Dr. Yang. Specifically, Knebel argues that the ALJ's reasons for discounting Dr. Smucker's, Dr. Femino's, and Dr. Yang's opinions are not supported by substantial evidence in the record. Knebel concludes that this matter should be remanded for further consideration of the opinions of Drs. Smucker, Femino, and Yang.

The ALJ is required to "assess the record as a whole to determine whether treating physicians' opinions are inconsistent with substantial evidence of the record." *Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2)). "Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as a whole." *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) (citing *Prosch v Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)). "The ALJ may discount or disregard such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions." *Id.*; *see also Travis*, 477 F.3d at 1041 ("A physician's statement that is 'not supported by diagnoses based on objective evidence' will not support a finding of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003). If the doctor's opinion is inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight.'*Id..*); *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004) (an ALJ does not need to give controlling weight to a physician's RFC if it is inconsistent with other substantial evidence in the record); *Cabrnoch v. Bowen*, 881 F.2d 561, 564 (8th Cir. 1989) (the resolution of conflicts of opinion among various treating and examining physicians is the proper function of an ALJ). The ALJ may discount or disregard a treating physician's opinion if other medical assessments are supported by

superior medical evidence, or if the treating physician has offered inconsistent opinions. *Hamilton v. Astrue*, 518 F.3d 607, 609 (8th Cir. 2008).

Also, the regulations require an ALJ to give "good reasons" for assigning weight to statements provided by a treating physician. *See* 20 C.F.R. § 404.1527(d)(2). An ALJ is required to evaluate every medical opinion he or she receives from a claimant. 20 C.F.R. § 404.1527(d). If the medical opinion from a treating source is not given controlling weight, then the ALJ considers the following factors for determining the weight to be given to all medical opinions: "(1) examining relationship, (2) treating relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors." *Wiese*, 552 F.3d at 731 (citing 20 C.F.R. §§ 404.1527(c)). "'It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.'" *Wagner*, 499 F.3d at 848 (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)). The decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight. SSR *96-2P*, 1996 WL 374188 (1996).

In his decision, the ALJ briefly reviews some of the opinions of Knebel's treating sources.[10] The ALJ weighed the treating source opinions as follows:

> The undersigned accords only some weight to [] Dr. Femino,
> Dr. Smucker's and Dr. Yang's residual functional capacity
> evaluations in that the limitations do not correspond and are
> not consistent with [Knebel's] own reports. Specifically,
> [Knebel] reported that he did laundry and light cleaning. He
> went shopping, drove a car and could perform self care needs.
> [Knebel] was capable of cooking complete meals with a couple

---

[10] *See* Administrative Record at 14-15.

> of courses. Additionally, [Knebel] reported he used a computer and participated in sports as a hobby.

(Administrative Record at 15.)

In reviewing the ALJ's decision, the Court bears in mind that an ALJ has a duty to develop the record fully and fairly. *Cox*, 495 F.3d at 618. Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quotation omitted). Furthermore, if an ALJ rejects the opinions of a treating physician, the regulations require that the ALJ give "good reasons" for rejecting those opinions. *See* 20 C.F.R. § 404.1527(d)(2).

The Court finds that the ALJ has not fully met these requirements. First, while the ALJ states that he gives the opinions of Dr. Smucker, Dr. Femino, and Dr. Yang "some" weight, he offers no explanation of what "some" weight means, or how that applies to the doctors' opinions. Second, in his brief, Knebel argues the ALJ's conclusion that his activities of daily living are inconsistent with the limitations imposed by Drs. Smucker, Femino, and Yang is not supported by the record. Specifically, Knebel points out that:

> The record does not support the ALJ's conclusion. Exhibit 4E states, in part:
>
>> *At times I will go and use the computer, even that is a short [] use for my neck & back start to hurt. At times I will run errands to pay bill[s], go to the store, or whatever else needs done. So for the most part of my day is staying at home doing as little as I can so that my body heals.*
>
> In responding to a question about personal care, Knebel noted he takes longer to dress and bathe because of limited mobility. It was harder for him to shave and feed himself as he was left-handed and tried to use his right hand. . . . As to housework, he performed some laundry and "very light cleaning," but only "until I start to hurt more intensely." His primary activity

during the day was watching television and he complained regarding his quality of life. Contrary to the ALJ's assertion that [he] participated in sports, Knebel reported, "No sports at all or anything else I used to do!" Knebel was "Unable to live the active lifestyle I've always lived" and noted poor quality of life. In short, the only evidence cited by the ALJ does not support the ALJ's conclusion.

Knebel's Brief (docket number 22) at 19-20. In section *IV.B.1* of this decision, the Court determined that the ALJ utterly failed to make a credibility determination for Knebel, or address any of the *Polaski* factors, including Knebel's activities of daily living. Because of that determination, the Court finds it very difficult to review the ALJ's sole reason for discounting the treating source opinions (the doctors' limitations are inconsistent with Knebel's activites of daily living), particularly when the claimant points out purported inaccuracies and inconsistencies between the record and the ALJ's reasoning. Therefore, under such circumstances, the Court finds the ALJ's reason for discounting the opinions of Dr. Smucker, Dr. Femino, and Dr. Yang to be inadequate under the regulations. *See* 20 C.F.R. § 404.1527(d)(2) (requiring an ALJ to give "good reasons" for rejecting the opinions of a treating medical source).

Having reviewed the entire record, the Court concludes the ALJ failed to give "good reasons" for rejecting the opinions of Dr. Smucker, Dr. Femino, and Dr. Yang. *See Tilley*, 580 F.3d at 680 ("The regulations require the ALJ to 'always give good reasons' for the weight afforded to the treating source's opinion."). The Court further finds that the ALJ failed in his duty to fully and fairly develop the record with regard to Dr. Smucker's, Dr. Femino's, and Dr. Yang's opinions. Accordingly, the Court determines that this matter should be remanded for further consideration of the treating source opinions. On remand, the ALJ shall provide clear reasons for accepting or rejecting the opinions of Drs. Smucker, Femino, and Yang, and support his reasons with evidence from the record.

Additionally, Knebel argues that new evidence submitted to the Appeals Council after the ALJ's decision, supports his disability claim. Specifically, Knebel asserts that additional opinion evidence from Dr. Yang provided after the ALJ's decision should be considered in determining whether he is disabled. Knebel concludes that based on this new evidence, the Court should reverse and remand this matter for payment of benefits.

In *Cunningham v. Apfel*, 222 F.3d 496, 500 (8th Cir. 2000), the Eighth Circuit Court of Appeals explained the effect of new evidence submitted to the Appeals Council for a reviewing court:

> The regulations provide that the Appeals Council must evaluate the entire record, including any new and material evidence that relates to the period before the date of the ALJ's decision. *See* 20 C.F.R. § 404.970(b). The newly submitted evidence thus becomes part of the 'administrative record,' even though the evidence was not originally included in the ALJ's record. *See Nelson v. Sullivan*, 966 F.2d 363, 366 (8th Cir. 1992). If the Appeals Council finds that the ALJ's actions, findings, or conclusions are contrary to the weight of the evidence, including the new evidence, it will review the case. *See* 20 C.F.R. § 404.970(b). Here, the Appeals Council denied review, finding that the new evidence was either not material or did not detract from the ALJ's conclusion. In these circumstances we do not evaluate the Appeals Council's decision to deny review, but rather we determine whether the record as a whole, including the new evidence, supports the ALJ's determination. *See Nelson*, 966 F.2d at 366.

*Id.*; *see also Van Vickle v. Astrue*, 539 F.3d 825, 828 (8th Cir. 2008) (The final decision of the Commissioner should be affirmed if the decision "is supported by substantial evidence on the record as a whole, including the new evidence that was considered by the Appeals Council."); *Nelson*, 966 F.2d at 366 ("The newly submitted evidence is to become part of what we will loosely describe as the 'administrative record,' even though the evidence was not originally included in the ALJ's record. . . . If, as here, the Appeals

council considers the new evidence but declines to review the case, we review the ALJ's decision and determine whether there is substantial evidence in the administrative record, which now includes the new evidence, to support the ALJ's decision."). In *Riley v. Shalala*, 18 F.3d 619 (8th Cir. 1994), the Eighth Circuit noted that a reviewing court:

> must speculate to some extent on how the administrative law judge would have weighed the newly submitted reports if they had been available for the original hearing. We consider this to be a peculiar task for a reviewing court.

*Id.* at 622.

Because the Court has already determined that this case should be remanded for further consideration, the Court will not "speculate . . . on how the administrative law judge would have weighed the newly submitted reports if they had been available for the original hearing," *Id.*; instead, the Court will allow the ALJ, on remand, to consider the new opinion evidence from Dr. Yang himself. The Court declines to reverse and remand this matter for payment of benefits based on the new evidence submitted to the Appeals Council after the ALJ rendered his decision.

### C. Reversal or Remand

The scope of review of the Commissioner's final decision is set forth in 42 U.S.C. § 405(g) which provides in pertinent part:

> The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with our without remanding the cause for a rehearing.

42 U.S.C. § 405(g). "Ordinarily, when a claimant appeals from the Commissioner's denial of benefits and [a court] find[s] that such a denial was improper, [the court], out of '[]abundant deference to the ALJ,' remand[s] the case for further administrative proceedings." *Buckner v. Apfel*, 213 F.3d 1006, 1011 (8th Cir. 2000) (citing *Cox v. Apfel*, 160 F.3d 1203, 1210 (8th Cir. 1998)). If, however, "the record overwhelmingly

supports a disability finding and remand would merely delay the receipt of benefits to which plaintiff is entitled, reversal is appropriate." *Thompson v. Sullivan*, 957 F.2d 611, 614 (8th Cir. 1992); *see also Fowler v. Bowen*, 866 F.2d 249, 253 (8th Cir. 1989) ("When the record is overwhelmingly in support of a finding of disability, there is not need to remand to the Secretary for further consideration."); *Gavin v. Heckler*, 811 F.2d 1195, 1201 (8th Cir. 1987) ("Where the total record is overwhelmingly in support of a finding of disability and the claimant has demonstrated his [or her] disability by medical evidence on the record as a whole, we find no need to remand."); *Beeler v. Brown*, 833 F.2d 124, 127 (8th Cir. 1987) (finding reversal of denial of benefits was proper where "the total record overwhelmingly supports a finding of disability"). In the present case, the Court concludes that the medical records as a whole do not "overwhelmingly support[] a finding of disability." *Beeler*, 833 F.2d at 127. Instead, the ALJ simply failed to provide adequate reasons for rejecting Knebel's subjective allegations of pain and disability, and for rejecting the opinions of Knebel's treating medical sources. Accordingly, the Court finds that remand is appropriate.

## V. CONCLUSION

The Court concludes that this matter should be remanded to the Commissioner for further proceedings. On remand, the ALJ must consider all of the evidence relating to Knebel's subjective allegations of pain and disability, address his reasons for crediting or discrediting those allegations, and properly apply the *Polaski* factors when determining Knebel's credibility. The ALJ must also provide clear reasons for accepting or rejecting the opinions of Dr. Smucker, Dr. Femino, and Dr. Yang, and support his reasons with evidence from the record. Lastly, in making his determination on remand, the ALJ should consider the new opinion evidence from Dr. Yang, provided to the Appeals Council after his initial decision.

## VI. ORDER

For the foregoing reasons, it is hereby **ORDERED**:

This matter is **REVERSED** and **REMANDED** to the Commissioner of Social Security pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings as discussed herein.

DATED this 29th day of December, 2014.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA